UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

S.S., *et al.*,

           Petitioners,

    v.

LAURA HERMOSILLO, *et al.*,

           Respondents.

Case No. C25-2684-MLP

ORDER

Petitioners S.S., Q.F., and I.R., through counsel, have filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging as unlawful their redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 1.) Respondents filed a return (dkt. # 8) and Petitioners filed a traverse (dkt. # 11). Having reviewed the parties' submissions and applicable law, the Court GRANTS the petition (dkt. # 1) and ORDERS Petitioners' release.[1]

### I.   BACKGROUND

Petitioners, three brothers who are natives and citizens of Afghanistan, fled their home country in fear of retribution by the Taliban because two of the Petitioners, in addition to several

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 6.)

ORDER - 1

other family members, had worked with U.S. and Afghan forces fighting the Taliban. (Dkt. # 1, ¶¶ 2, 16-18, 26; Ruby Decl. (dkt. # 9), ¶¶ 3, 17, 32; I.R. Decl. (dkt. # 11-1 at 4-10), ¶ 2; Q.F. Decl. (dkt. # 11-1 at 11-17), ¶ 2.)

On December 8, 2023, Petitioners S.S. and I.R. entered the United States near San Ysidro, California, requested asylum, and were detained by Border Patrol. (Dkt. # 1, ¶ 24; Ruby Decl., ¶¶ 4, 18.) On December 12, 2023, they were issued notices to appear and released on Orders of Release on Recognizance. (Dkt. # 1, ¶ 24; Ruby Decl., ¶¶ 5, 19.) On December 11, 2023, Petitioner Q.F. entered the United States near San Ysidro, requested asylum, and was detained by Border Patrol. (Dkt. # 1, ¶ 25; Ruby Decl., ¶ 33.) On December 15, 2023, he was issued a notice to appear and released on an Order of Release on Recognizance. (Dkt. # 1, ¶ 25; Ruby Decl., ¶ 34.)

Petitioners moved in with their older brother, who is a lawful permanent resident, in Oregon. (Dkt. # 1, ¶ 27.) Petitioners assert they have complied with the requirements of their release, including periodic check-ins with ICE. (*Id.*)

On December 14, 2025, ICE agents arrested Petitioners at their residence and transferred them to NWIPC. (Dkt. # 1, ¶ 28; Ruby Decl., ¶¶ 14-15, 29-30, 42-43.) On December 15, 2025, the Tacoma Immigration Court issued a notice scheduling a master hearing for all three Petitioners on January 14, 2026. (Ruby Decl., ¶¶ 16, 31, 44.) The outcome of that hearing is unknown as of the date of this Order. On December 23, 2025, Petitioners filed the instant action, arguing that the Due Process Clause of the Fifth Amendment requires their immediate release from detention and seeking to prevent Respondents from redetaining them without a pre-deprivation hearing. (Dkt. # 1.)

## II. DISCUSSION

### A. Legal Standard

Federal courts have authority to grant writs of habeas corpus to an individual in custody if that custody violates "the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

Petitioners argue that their arrest and redetention without notice and an opportunity to be heard violate the Due Process Clause of the Fifth Amendment to the United States Constitution (dkt. # 1, ¶¶ 6-8, 32-44; dkt. # 11), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Respondents argue that Petitioners are subject to mandatory detention under 8 U.S.C. § 1225(b) because they are "applicants for admission." (Dkt. # 8 at 4-6.) Respondents acknowledge this statutory interpretation has been rejected by the Court. (*Id.* at 6-7 (citing *E.A. T.-B. v. Wamsley*, 795 F.Supp.3d 1316 (W.D. Wash. 2025)).) Respondents contend that the Court in *E.A. T.-B.* erroneously imported the regulatory requirement to consider flight risk and dangerousness from the initial detention decision into the redetention decision. (*Id.* at 5-7 (citing 8 C.F.R. §§ 1236.1(c)(8), (c)(9)).) But the Court's reasoning was based on the risk of erroneous deprivation of liberty, not on the regulatory language. *See E.A. T.-B.*, 795 F.Supp.3d at 1323. As the Court recently explained in a similar case, "[t]o the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner[s'] detention, the

Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner[s were] detained." *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n. 1 (W.D. Wash. Nov. 26, 2025). Petitioners' due process claims must be addressed. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To comply with procedural due process, an individual must have "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). The Court will therefore evaluate Petitioners' claims using the *Mathews* three-part test:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

**B.     Petitioners Have a Considerable Private Interest in Their Liberty**

Petitioners' interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Arresting Petitioners in their home, transferring them to a facility in a different state, and continuing to hold them in custody undoubtedly deprives them of an established interest in liberty.

ORDER - 4

Respondents recognize Petitioners' "protected liberty interest" but counter that noncitizens have lesser liberty interests than citizens. (Dkt. # 8 at 7-8.) This argument, however, does not address Petitioners' central concern. Petitioners do not contend their liberty interests are equivalent to citizens'; instead, they assert that the Constitution protects their liberty interests by requiring due process prior to deprivation. (Dkt. # 11 at 4-7.)

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). Courts in this circuit have consistently found that the "government's subsequent release of [an] individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *See, e.g.*, *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

When they were released from initial detention on their own recognizance, Petitioners acquired liberty interests entitled to the protections of the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Petitioners' actions since that initial release, including applying for asylum, obtaining work authorization, enrolling in and attending school, and complying with their release conditions, demonstrate their reasonable reliance on these interests and the weightiness of those interests. Petitioners could only engage in those actions while free.

Accordingly, the first *Mathews* factor weighs in Petitioners' favor.

### C. The Risk of Erroneous Deprivation of Liberty is High

Petitioners contend the risk of erroneous deprivation of their liberty interests in the absence of a pre-deprivation hearing is high, especially given their strong asylum claims, ties to this country, compliance with conditions of release, and the fact that they have not received notice of the basis for their redetention or an opportunity to respond.[2] (Dkt. # 11 at 7-8.)

Respondents argue there is no statutory or regulatory requirement for a pre-deprivation hearing and the Court should not create one. (Dkt. # 8 at 6 (citing *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022)).) Petitioners do not claim entitlement to a hearing under a particular statute; they argue that the Due Process Clause requires it. Respondents' argument is therefore misplaced. *See*, *e.g.*, *Vargas v. Jennings*, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (that a petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).

Here, where Petitioners were initially released on their own recognizance after the government assessed flight risk and dangerousness, and they have been given no notice of the reasons for redetention, the risk of erroneous deprivation is high. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high."). The second *Mathews* factor weighs in Petitioners' favor.

### D. Respondents' Interest in Redetention Without Hearing is Minimal

The countervailing governmental interest in Petitioners' redetention is minimal. Respondents argue that there is a "heightened government interest in the immigration detention

---

[2] The question of whether Petitioners missed any check-ins appears to be in dispute. (*See* dkt. # 8 at 2-4; dkt. # 11 at 9, 14.) In any event, whether the alleged missed check-ins constitute a sufficiently changed circumstance such that detention is warranted is a matter for a pre-deprivation hearing. *See Monteiro de Souza v. Robbins*, 2025 WL 3523058, at *1 (E.D. Cal. Dec. 9, 2025).

ORDER - 6

context" and in preventing noncitizens from remaining in the United States in violation of law. (Dkt. # 8 at 10.) But those interests are not threatened if a pre-deprivation hearing is required. The fact that Respondents have not articulated a reason for redetaining Petitioners—who have no criminal history, timely filed for asylum, obtained work authorization, and complied with their conditions of release—undermines any suggestion that Respondents' interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable. While providing Petitioners hearings before redetaining them would require expending resources (money and time), those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

In sum, this Court finds that all three *Mathews* factors weigh in Petitioners' favor. They should be released and not redetained without a hearing before an immigration judge.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS:

(1)   Petitioners' habeas petition (dkt. # 1) is GRANTED;

(2)   Respondents shall immediately release Petitioners from custody;

(3)   Petitioners shall not be redetained without notice of the reasons for detention and an opportunity to be heard before a neutral adjudicator; and

(4)   Within **twenty-four (24) hours** of this order, Respondents shall provide the Court with a declaration confirming Petitioners have been released from custody.

//

//

Dated this 23rd day of January, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 8